Helfenstein & Gore v. Cave.

---

## HELFENSTEIN & GORE *v.* CAVE.

3  287
112  679

Laws relating to contracts and to their enforcement, affect either the contract itself, or the remedy.

Those granting exemptions from execution, affect the remedy.

The exemption of a homestead, subject to the qualifications and limitations propounded in *Bronson* v. *Kinzie*, 1 Howard, 311; *McCracken* v. *Hayward*, 2 Ib. 228; and *Gauntley's Lessee* v. *Ewing*, 2 Ib. 608, is as truly a part of the remedy, as the exemption of a horse, or other article of property.

Where a plaintiff brings an action, claiming a right, given under certain conditions or qualifications, he is obliged to bring himself within those conditions; and where a defendant relies upon, and defends under, a similar right, he must do the same.

Where a party defends against an action of right, brought for the recovery of premises purchased at a judicial sale, on the ground, that the premises were his homestead, and exempt from such sale under the act entitled "An act to exempt a homestead from forced sale," approved January 15th, 1849, he must aver that the property was such as the law exempted for a homestead.

If he claims the land as used for agricultural purposes, in addition to the allegation that it is a homestead, he must allege, that it is not situate within a town; that it does not exceed forty acres in quantity; that it is used for agricultural purposes; and that its value does not exceed five hundred dollars.

If the party claiming the homestead, has more than forty acres, the creditor or purchaser may take the excess, without respect to the value. If the forty acres exceeds the prescribed value, the quantity must be reduced, so as to make it consistent with the value allowed.

If the premises; when reduced to the smallest quantity, as to the dwelling-house and its appurtenances; that is, to that which constitutes a messuage, exceeds the given value, it is not exempt as a homstead.

Where the premises exceeds five hundred dollars in value, it must be ascertained whether it can be divided so as to leave a homestead, within the statute limitation. This may be done by the intervention of referees, or in some of the methods of proceeding known to the law.

Helfenstein & Gore v. Cave.

The intention of chapter four of the Code, was to save all rights existing under former acts, even to the extent of those accruing.

Where a note was dated October 28th, 1850, upon which suit was commenced and attachment levied, on the 9th of June, 1851; and where judgment was rendered in September, 1851, and the levy and sale of the premises took place in 1852; *Held*, That a right to his homestead, if he had one, existed in the defendant, in relation to this contract, under the homestead act of 1849; and that this right was saved by section 31 of the fourth chapter of the Code.

Under the homestead act of 1849, a wife has no right independent of her husband; and she should not be made a party to a suit, or permitted to defend, in relation to the homestead.

*Appeal from the Van Buren District Court.*

THE plaintiffs had recovered a judgment on a promissory note against the firm of Wyman & Cave; and had levied this execution on the tract of land in dispute. This was levied upon as the property of Cave only. The plaintiffs bring this action, in the nature of an action of ejectment, or of right to recover the land. The defendant sets up a right of homestead on the land, and claims that it was exempt from the execution. The former action, in which the plaintiffs obtained this judgment, was upon a promissory note, bearing date at St. Louis, Missouri, October 28th, 1850. The suit was commenced, and land attached, prior to July 1, 1851. The judgment was rendered September 6th, 1851, and the sale took place in October, 1852, at which the plaintiffs were the purchasers. During the progress of the cause, Delilah, wife of the defendant, Cave, petitioned to be made defendant, and was so made a party, and set up a claim to the homestead, as existing in herself *as a wife*, independently of what her husband may have done, or omitted to do; and claiming that her right could not be compromised by any laches of her husband.

As the pleadings are somewhat voluminous, and are very confused, they are not set out, but a sufficiency of them will appear in the opinion of the court, in connection with the questions made. The counsel have facilitated the understanding of the case, by a statement of the questions raised

and presented for determination. Judgment was rendered for the plaintiffs, and the defendants appeal.

*Knapp & Caldwell*, for the appellants.

*C. C. Nourse*, for the appellees.

WOODWARD, J.—The first question made, to which we will turn our attention, is, whether the defendant is entitled to a homestead exemption, against this contract, which was made in the state of Missouri, in October, 1850? The law under which it is claimed, is the act of 1848–9. Session Laws, 1848–9, chapter 124, 152. In point of time, the contract is covered by this act. But, it is urged that the *lex loci contractus* governs the case; and that as the law of Missouri gave no homestead exemption, the defendant has none un-der this contract.

Laws relating to contracts and to their enforcement, affect either the contract itself or the remedy. Those granting exemptions from execution, affect the remedy. The exemption of a homestead, is as truly a part of the remedy, as the exemption of a horse or other article of property. This re-mark is made subject to the qualifications and limitations propounded in the cases of *Bronson* v. *Kinzie*, 1 How. 311; *McCracken* v. *Hayward*, 2 How. 228; *Gauntley's Lessee* v. *Ewing*, 2 How. 608. To hold that the laws of other states, where contracts happen to be made, govern in this matter, would introduce great confusion into our midst, and would place our citizens upon unequal ground. The court below held the same view, and there was no error therein.

Another question made, under a demurrer of the plaintiff to the defendant's answer, is, whether the defendant should not allege, that at the time of the attachment, he claimed his right of homestead in the land; or whether he should not allege, that he made this claim at the time of levy and sale; whether he should not allege, that the value of the property did not exceed five hundred dollars; that it was not within a recorded town plat; and that he used and occupied the land

for agricultural purposes ?   To answer these inquiries, we must look at the statute.   It provides that a homestead shall be exempt from forced sale, on final process, for any debt or liability contracted after the 4th of July, 1849; but it prescribes these qualifications, viz : consisting of any quantity of land, not exceeding forty acres, used for agricultural purposes, not included in any recorded town plat, or city, or village, and to be selected by the owners.   In the same section (which is one clause or paragraph), is a *proviso*, that the value of such exempted homestead, or town lot, and dwelling thereon, shall in no case exceed the sum of five hundred dollars.   The same section, as an alternative for this homestead in agricultural lands, gives not exceeding one-fourth of an acre, being within a recorded town plat, city, or village. The act gives a homestead either in a town or in agricultural lands (that is, in the country).   In the latter case, the quantity is increased, but not the maximum *value.*

The homestead exemption owes its existence to statute law entirely, and we must accept of it, if at all, under just the qualifications, considerations, and circumstances, under which the law gives it.   We cannot say that the law ought to have been different, and ought to have given the right under different qualifications or fewer conditions.   We construe, not make the law.   It would seem, from the argument, as though counsel had their eye on a subsequent homestead law, which they esteemed a better one, and pressed the rights of the defendant, under the former act, as if they were created by the latter ; or as if the former act should be interpreted by the better provisions of the latter.   This we cannot do.   The latter act may be a better one than the former, but the former gave what we never had before, and we must take it as given.

In respect to these qualifications defining the right, this act is like many others, only that in the present case, it throws that upon the defendant, which usually falls upon a plaintiff.   But this arises from the nature of the case, and is incidental only.  When a plaintiff brings an action claiming a right, given under certain conditions or qualifications,

Helfenstein & Gore v. Cave.

he is obliged to bring himself within those conditions. So it is with this defendant. The plaintiff demands the land as sold and purchased under a judicial sale. The defendant claims, that it was exempt from that sale, by virtue of the statute. To make this appear, he must show that the property was such as the law exempted for a homestead. A smaller quantity is given in a town, than of agricultural land. If he claims the land as of the latter character, he must show it to be such as the statute gives; that it is not within a town; that it does not exceed forty acres in quantity; that it is used for agricultural purposes, and he must come within the proviso limiting its value to $500. He has to allege, that it is his homestead, of course, and why should he not allege the other circumstances? These remarks apply to an instance like the present, where the debtor sets up his homestead exemption, in an action brought to recover the land. The like is true in all cases, where one claims a right given by law, under certain circumstances. He brings himself in his allegations within them. In the present instance, when he claims forty acres of land, he must show that it is agricultural land, and not within a town. He would not be held rigidly to his averment as to quantity and value, in this case, more than in others. His rights do not depend upon an accurate computation, or a correct estimate; upon this point, we are enlightened by the statute. See section 4. By this, it is provided, that if the creditor thinks the debtor lays claim to too great a quantity, he may cause the error to be corrected. And we apprehend that this would be applied to value, as well as quantity. If he has more than forty acres, the creditor may take the excess, without respect to the value. If the forty acres exceeds the prescribed value, the quantity must be reduced, so as to make it consistent with the value allowed.

And this brings us to another question in the case. If the homestead claimed exceeds $500 in value, is he entitled to the exemption? We answer, that, as said above, when the quantity can be reduced so as to reach the given value, this may be done. But if, when reduced to the smallest quantity,

such as to the dwelling-house and its appurtenances; that is, to that which constitutes a messuage, it then exceeds the given value, we see no way in which to give him his homestead. The statute is explicit, that he may have his homestead, provided it do not exceed the value limited upon it. The corollary is clear, that if it does exceed, it is not exempt. It is true that this gives to him who has little, and takes from him who has much, or who has only more. We do not say this is a wise law. It has been changed. But we do not know any other way of interpreting it. Other statutes, with provisoes similarly related, are construed in this manner. There is no provision for dividing the homestead; nor for setting off rents and profits; nor for an extent; nor for selling the whole, and paying the debtor the five hundred dollars, and applying the surplus to the debt; nor is there anything upon which the most liberal judicial construction can build any of these systems.

By section one, the homestead " is {to be selected by the owner thereof." That is, he may select which of two or more tracts of land, one being within a town, and one without, or both within, or both without, he will adopt as his home. This is the meaning of these words, rather than that he should *necessarily* set it out by metes and bounds. ` It would seem from section three, that he may set it apart by metes and bounds, but there is no provision whatever, concerning recording and making such record a notice. But the case does not lead into the solution of this difficulty. It is in terms set down, that when it is not thus set apart by metes and bounds, the debtor may notify the officer at the time of making the levy, of what he regards as his homestead, &c. It would be going too far to say, that this notice could not be given at any time before the levy; but whether it could be given effectively after that, it is not necessary to determine, for the amended answer avers, a notice to the sheriff who held the writ of attachment, and to his successor. ·

In order to take a connected, and therefore, a more brief and clear view of the statute, we have passed beyond the particular point now under consideration, and have touched

upon several.   We return to the question before made, as to the necessity of averring that the defendant made due claim of homestead as to value ; as to its not being a town ; and as to its being agricultural land.   It will be perceived, that this court holds to the necessity of the defendant's making these averments ; and, therefore, that the court did not err in sustaining the 4th, 6th and 7th causes assigned in the plaintiffs' demurrer to the defendant's amended answer, *except* so far as they go to the want of an averment, that the land was used and occupied for agricultural purposes, for this averment is made in the original answer.

A third question presented is, whether the defendant should not, in the absence of a claim to the sheriff to have the homestead set apart, allege a record of it, or a notice to the purchaser?   Sufficient has probably been said bearing upon this subject.   But it is not perceived that the question is raised by any of the pleadings ; and besides, it appears to the court, that there is an averment of claim and notice to the officers, and to the plaintiff, distinctly made.

The fourth question is, whether the plaintiff can recover any part of the property, if its value exceeded $500 ?   The plaintiff averred it to amount to $900 in value, to which the defendant demurred, and the court overruled the demurrer. It appears the quantity of land was about thirty-five acres. It has been before suggested, that if it exceeds the proper value, and is divisible, and the quantity can be reduced so as to meet the required value, this must be done.   If a claim was made, and this was not done before sale, it must be done now, by the intervention of referees, or in some of the methods of proceeding known to the law.   When an end is distinctly pointed out by statute, but the mode is not prescribed, the court will find a method.   The overruling the demurrer, was correct, for this does not dispose of the whole matter. There is a fact to be ascertained.   If the whole land exceeds $500 in value, it is then to be found whether it can be divided, so as to leave a homestead within the statute limitation.

Another point is, whether the defendant is entitled to a

homestead in this case, under the act of January 15th, 1849, the same having been repealed July 1st, 1851? The important dates are these: the note was dated October 28th, 1850; suit was commenced and attachment levied, June 9th, 1851; the Code went into force, July 1st, 1851; judgment, September, 1851; and the levy and sale in 1852. There may be some force in the answer to the above question, that as the plaintiff commenced his remedy whilst the act of 1849 was yet in existence, the defendant's rights arose at the same time; and that as all subsequent steps in the suit, have relation to that commencement and attachment, so the rights of the defendant relate to the same time, and are to be judged by the law then in being. We do not stop to determine the soundness of this view, for whatever truth there may be in it, a more manifest and satisfactory answer, is found in chapter four of the Code.

This chapter relates to the repeal of former acts; and section 31 provides, that "this repeal of existing acts, shall not affect any act done; any right accruing, or which has accrued, or been established, &c., before the time when such repeal takes effect." Now, under the act of 1849, a right existed in the defendant in relation to this contract, that is, a right to his homestead, if he had one, and this right is saved by the repealing chapter of the Code. The intention of the Code, adopted in 1851, was to save all rights existing under former acts, even to the extent of those yet accruing. There is no doubt in our opinion, but that the rights of the defendant under this contract, were saved by the act of repeal. On this point, therefore, the court did not err.

The remaining question is, whether Delilah Cave, wife of the defendant, should have been made a party, and should have been permitted to make defence? We think she should not, and that herein the court erred. Under the statute of 1849, she has no right, independent of her husband. The argument urged is, that the husband (by section 2) cannot alienate the homestead without her consent; therefore, a judicial sale *cannot take it away*. This does not follow, as of course. By our statute of dower preceding the present one,

the husband could not alienate this right from the wife, but yet a judicial sale would take it from her. And the above argument, if valid, would apply to such a case, as well as to the one before us. It may be indifferent legislation, but it is not bad reasoning, to say that the husband cannot alien the wife's interest, and yet that a judicial sale may take it from her.

But there is another view to be taken of her claim in this cause. If she has rights under the act of 1849, which she may assert separately from her husband, they cannot be such, at the best, as to exonerate her from doing that which her husband was to do—that which the law required. She must at least show, that she has done that which her husband was required to, but omitted to do. She must take the ground, that what he has omitted, she has done; or that as he refuses or neglects to make defence, she should be permitted to do so. Something like this, must be her position. There is no new, different, independent basis of right or law, for her to found her claim upon. The statute is very meagre and deficient upon the other matters above alluded to, it must be admitted; but there is room to doubt whether it intended to confer upon the wife the right here claimed, which is an *independent* right. The utmost that could, in any view of it, be accorded her, would be to defend, if he did not; or possibly to show that she had supplied his omission, by doing some act which he had neglected. But, if she cannot assume one or the other of these grounds, there does not appear any reason for her becoming a party.

We are not inclined to settle the question definitely as to her becoming a party under the above circumstances, since the cause does not demand it; but it seems apparent, that without assuming some such positions, as those above indicated, there is no call or occasion for letting her in. Of what benefit would it be? What would she gain, or what can she do? What is her position, as she asks admission now? The husband appears and defends, and she does not pretend the contrary. She does not claim that he has refused or neglected to do some necessary act, which

she has supplied.  She simply sets up a right to the homestead, as the wife of the defendant, and as the mother of a family, without reference to what her husband has done or omitted to do.  This claim of right, we cannot recognize, and, therefore, it is our opinion, that the court erred in permitting her to come in as a party defendant.

The character of the cause has led the court to pass over some matters which, upon an observance of rules, would have sent both parties out of court.  But as no objection has been made on account of these irregularities, we have preferred to try to determine the questions of the cause, and to recommend both parties to a repleader.  The papers are in so great confusion, and sometimes so imperfect, that it will be difficult for either the court or the counsel to proceed with intelligence.

The judgment of the District Court upon the application of Delilah Cave, to be made a party, and upon the supposed want of an averment in the answer, that the land was used and occupied for agricultural purposes, is reversed; and the judgment upon the other questions here presented, is affirmed.