Larson v. Reynolds & Packard.

LARSON v. REYNOLDS & PACKARD.

13 579
118 198

1. CONVEYANCE OF HOMESTEAD. A conveyance of the homestead by the husband without the concurrence of the wife is void.

2. SAME: DEATH OF THE WIFE. When the husband executed a mortgage, conveying the homestead, without the concurrence of the wife, and the wife subsequently died, after which the husband was again married; and after the second marriage, the husband permitted a decree to be entered by default, foreclosing the mortgage, in an action to which the second wife was not made a party, it was held:

1. That the conveyance made by the husband without the concurrence of the first wife was invalid, and did not operate to preclude the right of homestead in the second wife.

2. That the decree was conclusive as to the husband, but did not bind the second wife, for the reason that she was not a party to the proceeding.

3. SAME: WIFE A PARTY. While the wife is not a *necessary* party to proceedings relating to the homestead, she will not, when not made a party, be estopped by a decree foreclosing a mortgage thereof executed by the husband alone, neither can she be ousted from the possession by a sale made under such a decree.

*Appeal from Winnesheik District Court.*

TUESDAY, OCTOBER 14.

ON the 25th of September, 1856, the complainant was seised in fee of the N. W. quarter of the N. E. quarter of section 9, township 98, range 7, and occupied the same as a homestead, with his wife and children. On that day, he bought of one Dow, certain other real estate, and to secure the purchase money, made a mortgage upon the property so purchased, together with other land, including the said homestead. This mortgage was signed by complainant, but not by his wife. Dow sold the mortgage to Packard, who commenced his action to foreclose the same on the 19th of September, 1859. The notice was served by copy left with a member of complainant's family, &c. A decree of foreclosure was entered by default, in October, 1859. A special execution issued, November 22, 1859, and thereunder, on the 31st of December, all the mortgaged property was sold to Packard, and a deed made by the sheriff accordingly. May 19th, 1860, Packard sold and conveyed a portion of the land, including the homestead tract to Reynolds, who, on January 4, 1861, notified complainant to leave the premises so purchased. The wife of complainant died after the making of said mortgage, and before the institution of the foreclosure suit. He married again, at what time is not clearly shown, but probably some time in the year 1857. To restrain Reynolds from proceeding with his action of right, this bill was filed, an injunction obtained, and, on the final hearing, the same made perpetual, the sale by the sheriff, and all titles thereunder set aside, from which respondent (Reynolds) appeals.

*Clark & Clark* for appellant.

*L. W. Griswold* for appellee.

WRIGHT, J. — Various grounds are set out in the bill for setting aside the decree of foreclosure, the sheriff's sale, the deed from Packard to Reynolds, and protecting complainant in his homestead, and title to all the land sold by the sheriff, but it is manifest, and substantially admitted in the argument, that in the court below the decision turned upon a construction of the homestead statute, as applied to the actual facts and circumstances of the case. And this might well be so, for, as against Reynolds, neither defects in the petition for foreclosure, variance between the notice and petition, the supposed blending therein of law and equity jurisdiction, the fact that the decree was drawn up by petitioner's attorney, that it was not signed by the judge, that the sheriff's deed to Packard was insufficient in its recitals, that the premises were sold for $362, when worth from $1,200 to $2,000, nor all of them combined, would be sufficient to defeat his title. The cardinal question is, (and it is to reach this point, that the petition is, for the most part, drawn,) whether the sale of the homestead is void, or whether, under the circumstances disclosed, Reynolds acquired any title thereto, as against the mortgagor.

The statute expressly enacts that a conveyance of the homestead is of no validity, unless the husband and wife concur in, and sign the same. (Code, 1247, Revision 2279.) And that a conveyance by mortgage signed by the husband alone, under such a statute, is invalid. See the following cases: *Alley* v. *Bay*, 9 Iowa, 509; *Yost* v. *Devault*, Id., 60; *Williams* v. *Swetland*, 10 Id., 51; *Dorsey* v. *McFarland*, 7 Cal., 342; *Richards* v. *Chase*, 2 Gray, 1; *Williams* v. *Starr*, 5 Wis., 534.

But these questions remain. What effect does the subsequent death of the wife have? How far is complainant concluded by the foreclosure proceedings? Does his subsequent marriage before the foreclosure affect the question?

If complainant's present wife had been made a party to the bill to foreclose, we think the controversy would have been at an end. A failure to set up the homestead exemption at that time would have concluded and estopped them from making the claim against one holding under the sale. The order of foreclosure would have settled the homestead right, and in an action for the possession, it could not be again adjudicated. This seems to us to be in accordance with familiar and well settled law, as applied to analogous questions, and is sustained by the following direct adjudications. *Lee* v. *Kingsley*, 13 Tex., 68; *Tadlock* v. *Eccles*, 20 Id., 782. Where there is personal service, and a party from his own fault, fails to make his defense, he is as much concluded, as if the question had been expressly determined.

And so, again, if complainant had not been married at the time of the foreclosure, he could not now raise the question. For, if unmarried, he was the only person who could defend, or insist upon the homestead right. And though the mortgage was invalid for want of the wife's signature, yet he might or not insist upon such invalidity. It is as if he had been sued upon a note declared void by statute, or one that he had fully paid, or one obtained by fraud, and had failed after personal service, to make his defense. In such a case, the judgment concludes him of course, and we see no reason why the same rule does not apply in the present instance.

The mortgage being invalid at the time of its execution the subsequent death of the wife would not change its character. If her right therein had been a mere dower interest, the deed without her signature would have been good to the extent of his right, and her death would have put an end to any claim of dower. But the right of the wife to the homestead differs from that of dower, and the provisions of the statute as to its conveyance or incumbrance

are also different.   It is not different from dower in such a
sense that a similar deed will not convey the one as well as
the other.   But the difference arises necessarily from the
rights and privileges reserved to the wife during and after
the life of the husband.   Thus the husband may fail to
select, plat, mark out and record the homestead, and if so,
the privilege then devolves upon the wife.   So as we have
already seen, the deed passes nothing, not even his interest,
if she does not join.   Upon his death she has a right to
continue in its occupation, and it cannot be taken from
her by his will or device.   And if she does not survive the
husband, her issue may, upon a certain contingency, take
the whole homestead.   From which premises it is reasonably
clear that the wife's right or interest in the homestead is
not merely an inchoate one, to become vested after his
death, and after assignment, that may be disposed of by a
judicial sale for the debt of the husband; but that the
occupation of it as a home gives her a right therein, without
any further act on her part, or any one for her, which can-
not, without her consent, be divested.   The homstead
belongs as it were to the family.   It is for the benefit of
the family — parents and children.   As to its conveyance,
the law contemplates that there shall be a concurrence of
both minds, (of the two heads, so to speak,) before the
dwelling-place of the family shall be encumbered, or the
right of either one be divested or affected.   It is seen, there-
fore, that the will of the wife is, in theory, as supreme as
that of the husband.   And in perfect consonance with
these views, is the case of *Revalk* v. *Kraemer*, 8 Cal., 66;
and Id., 76, where it was held that a mortgage upon a
homestead, which was void because executed by the
husband alone, is not rendered valid by the subsequent
death of the wife.   In such a case, the debt remains good,
and the property, if liable, becomes so just as if the mort-
gage never existed.   The case of *Ties* v. *De Diabler*, 12 Cal.,

327, recognizes somewhat the same principle, for it is there held that the exemption is as much for the benefit of the children as the wife, and therefore, where, after the elopement and adultery of the wife, the husband mortgaged the homestead, the mortgage was held inoperative and void.

The mortgage was invalid then, when made. If complainant had not been married at the time of the foreclosure, or if the present wife had been made a defendant in that action, the homestead exemption could not now be set up. It then remains to inquire what effect shall his subsequent marriage and the non joinder of the wife have upon respondent's title.

The necessity of making the wife a party, or allowing her to intervene in an action affecting the homestead, is not very clearly settled by the authorities. In California and Texas, (in which states, by the way, more important questions touching the homestead right have been settled than in any others,) it is held that husband and wife should be joined; that if, on foreclosure, she is not joined, her rights are not affected, and that it is error to refuse to allow her to intervene. (*Sargent* v. *Wilson*, 5 Cal., 504; *Tadlock* v. *Eccles*, 20 Tex., 782; *Revalk* v. *Kraemer*, 8 Cal., 66; *Cook* v. *Klink*, Id., 347. And see *Wesnier* v. *Farnham*, 2 Mich., 472.) The cases in 8 Cal., hold that if the husband alone is made a party and defends, his rights are not concluded by the decree, and he may, notwithstanding, join with his wife in a bill to restrain the carrying of the decree into effect.

In our own state, the question has undergone some discussion. *Sloan* v. *Coolbaugh*, 10 Iowa, 31, was a bill in equity by the husband to restrain a sale under a mortgage with power of sale, (the mortgage being signed by the husband and wife,) and it was there held that the wife was not a necessary party. In *Helfenstein & Gore* v. *Cave*, 3 Iowa, 287; the plaintiffs brought ejectment, and the husband set up the homestead claim. During the progress of the

cause the wife asked to be made a party, and set up a claim to the homestead as existing in herself as a wife, independently of what her husband had done or omitted to do. The question arose under the act of 1849, ch. 124, and it was held that she should not have been allowed to intervene. In discussing the point, WOODWARD, J., uses this language: "If she has rights which she may assert separately from her husband, they cannot be such, at the best, as to exonerate her from doing that which her husband was to do, that which the law required. She must at least show that she has done that which her husband was required, but omitted to do. She must take the ground that what he has omitted she has done; or that as he refuses or neglects to make defense, she should be permitted to do so. Something like this must be her position. There is no new, different, or independent basis of right or law for her to found her claim upon. The statute is very meagre and deficient upon the matters above alluded to, it must be admitted; but there is room to doubt whether it intended to confer npon the wife the right here claimed, which is an *independent* right. The utmost that could, in any view of it be accorded to her, would be to defend if he did not, or possibly, to show that she had supplied his omission by doing some act which he had neglected. But if she cannot assume one or the other of these grounds, there does not appear any reason for her becoming a party."

"We are not inclined," he continues, "to settle the question definitely, as to her becoming a party under the above circumstances, since the cause does not demand it; but it seems apparent, that without assuming some such positions as those above indicated, there is no call or occasion for letting her in. Of what benefit would it be? What would she gain, or what can she do? What is her position, as she asks admission now? The husband appears and defends, and she does not pretend the contrary. She does

not claim that he has refused or neglected to do some necessary act, which she has supplied. She simply sets up a right to the homestead, as the wife of the defendant, and as the mother of a family, without reference to what her husband has done or omitted to do. This claim of right we cannot recognize, and, therefore,' it is our opinion that the court erred in permitting her to come in as a party defendant."

Following what we believe to be the spirit of our statute, and especially after the construction given to it by these cases, we are inclined to the opinion and so hold, that the wife is not a *necessary* party to *every* action which may affect the homestead. If she is a party to the mortgage foreclosed, then of course, if not a party to the foreclosure, she would not be concluded by anything done. In that case, however, it would by no means follow that the husband, if a party, would not be estopped, though the wife might not be. The cases in California ( 8th, 66, 347, ) go much beyond what we regard the correct rule under our statute, in holding that if the husband alone is made a party, and defends, *his* rights are not concluded. He might, it is true, join with the wife in a bill to restrain proceedings under such a decree, but this, as it seems to us, upon the ground of protecting her rights, and not because there was any right of his left for adjudication. In other words, as he could, if sued alone, set up the exemption, he could not, after decree upon that question, still insist, for himself, upon the same claim.

But assuming that she is not a *necessary* party, and that there has been a foreclosure of a mortgage which she did not sign, does it follow that the decree to which she is not a party estops either or both of them from claiming the exemption. Or take the very facts of this case. When the complainant married, in 1857, there was no valid incumbrance upon his homestead. His present wife, therefore,

acquired the same right and interest therein, as though the mortgage under which respondent claims had not been made. The invalidity was such as to effect it in the hands of any third person. And therefore, while she is not a *necessary* party, in all cases affecting the homestead ( as in *Sloan* v. *Coolbaugh*, 10 Iowa, 31, or in ejectment, under ordinary circumstances, brought by or against the husband,) yet, in this instance, before she could be concluded and ejected from the possession of the homestead, which was never validly incumbered, she should have been made a party, and while the decree would be good, as against the husband, it would not as to her. Not being good as to her, and as her right to the possession of the homestead cannot be disturbed by the sole action of the husband, ( we speak here of the general rule, and not of the exceptions contemplated by § 1249, and other parts of the Code, ) ejectment would not lie to dispossess herself and family, as well as the husband, — for their possession is the same, and if one cannot be dispossessed, neither can the other, according to the theory and policy of our law.

Under the testimony, it is impossible to ascertain how much was bid for the homestead, and how much for the other mortgaged property. The sale should, therefore, be set aside, and a new one ordered, so much of the decree, however, as sets aside the entire order of foreclosure is reversed. It is good, as against the husband, as to the amount found to be due, and also, so far as it forecloses his interest in the mortgaged premises. The cause will be reversed and remanded, with instructions to proceed in a manner not inconsistent with this opinion.

Reversed.