# IN THE COURT OF APPEALS OF IOWA

No. 16-0081
Filed January 11, 2017

**FIRST AMERICAN BANK,**
    Plaintiff-Appellant,

**vs.**

**URBANDALE LASER WASH, L.L.C., WALNUT CREEK LASER WASH, L.L.C., and STEVEN GOLDEN,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

A bank appeals the district court's order allowing a judgment debtor to designate a portion of his property as his homestead. **AFFIRMED.**

Jonathan E. Kramer of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Kelsey K. Crosse, Matthew E. Laughlin, and Sarah E. Crane of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellees.

Heard by Vogel, P.J., and Tabor and Mullins, JJ.

**VOGEL, Presiding Judge.**

First America Bank appeals the district court's decision allowing Steven Golden to carve out approximately a one-half-acre piece of land from the property he owns to designate as his homestead. The bank asserts the ability of a homeowner to select and plat a homestead under Iowa Code chapter 561 (2015) should be subject to the local zoning ordinances and rules regarding the division of property. Because Golden's property cannot be subdivided in compliance with the controlling city ordinances, the bank claims Golden should not be entitled to claim a homestead exemption. Golden claims the division was proper because the rights of the judgment debtor to protect his homestead from execution are jealously guarded and cannot be eliminated by local ordinances that prevent property from being further divided.

This is the third time these parties have been before this court. In *First American Bank v. Urbandale Laser Wash*, 874 N.W.2d 650, 651–52 (Iowa Ct. App. 2015), this court was asked to decide whether the district court properly granted the bank's summary judgment motion in a foreclosure proceeding. In *Golden Enterprises, L.L.C. v. Iowa Dist. Ct.*, No. 15-0824, 2016 WL 2748234, at *1 (Iowa Ct. App. May 11, 2016), we were asked to resolve a discovery dispute regarding whether subpoenas issued to Golden's company and spouse were unduly burdensome or sought irrelevant information. In this third matter, we must determine whether Golden may plat a homestead under Iowa Code chapter 561, protecting his home from execution, when the resulting property division violates the local city zoning ordinances.

In September 2015, after the in personam judgment of foreclosure was entered against Golden, the bank filed a notice of sheriff's levy and sale, seeking to sell at public auction Golden's home in the city of Clive. Golden moved to quash the sale, asserting the property was his homestead and that he was in the process of replatting the property because it exceeded the one-half acre allowable as a homestead under Iowa Code section 561.2—"If within a city plat, it must not exceed one-half acre in extent . . . ." The bank resisted the motion to quash, asserting the city ordinances prevented the lot on which the house was situated from being further subdivided but agreeing a hearing should be set for the court to determine pursuant to section 561.6 the applicability of the homestead exemption. Pending the hearing, the bank agreed to cancel the sale.

Thereafter, Golden filed a notice of homestead plat with the district court and attached to that notice a land survey with a legal description of the property he was claiming as a homestead. The entire lot totaled .94 of an acre. Golden carved an irregular shaped area consisting of the driveway, the home, and some lawn surrounding the home. In addition, he carved out a small 1.61-foot-wide strip of land encompassing the perimeter of the property,[1] with his total homestead totaling .48 of an acre. The remaining land on all sides of the home was excluded from the homestead designation. The following is a map of the designation.

---

[1] The district court ruling did not address the minimally contiguous nature of the 1.61 foot perimeter to the home and driveway. *See* Iowa Code § 561.1 (defining the homestead to embrace the house used as a home by the owner and may contain "one or more contiguous lots or tracts of land").



The bank moved to strike the homestead plat, asserting it was not a proper certified plat or subdivision plat as those terms are defined in Iowa Code chapters 354 and 355 and the plat did not conform to the city zoning ordinances, resulting in the creation of two nonconforming parcels. The bank asked the court to conclude that because no subdivision of the land was possible to remain in compliance with the local ordinances, no homestead rights could attach to the property. Golden resisted the bank's motion to strike his homestead plat, noting the plat was not required to be a certified or subdivision plat under chapters 354 and 355, and claiming it was proper under chapter 561.

The matter came on for hearing before the district court on December 22, 2015. The bank, as a creditor, sought for the district court to establish the boundaries of the homestead under section 561.6. The court then accepted the plat designation filed by Golden, explaining a creditor cannot levy upon the debtor's homestead and filed an order adopting the same. The bank appeals.

The execution of the foreclosure judgment was heard in equity, and thus, our review is de novo. *See* Iowa R. App. P. 6.907.

Iowa Code section 561.16 provides, in part: "The homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." The homestead is defined as "the house used as a home by the owner," and it is limited to a one-half-acre piece of land if the property is in a city plat or to no more than forty acres if it is agricultural land. Iowa Code §§ 561.1, .2. The homestead can have only one dwelling house, and the owner of the property can "select the homestead and cause it to be platted." *Id.* §§ 561.3, .4. Alternatively, the court can determine the homestead upon the application of a creditor or any interested person. *Id.* § 561.6.

> Homestead rights are jealously guarded by the law. Homestead laws are creatures of public policy, designed to promote the stability and welfare of the state by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune. Homestead rights are purely statutory and get their vitality solely from the provisions of legislative enactment.

*Merchants Mut. Bonding Co. v. Underberg*, 291 N.W.2d 19, 21 (Iowa 1980) (citations omitted). "Recognizing the important public purpose of the protections established for the homestead interest, we construe our homestead statute broadly and liberally to favor homestead owners." *In re Estate of Waterman*, 847 N.W.2d 560, 567 (Iowa 2014).

It is the bank's position on appeal that the ability of a court or the homeowner to plat a portion of the property as a homestead is limited by the local rules and ordinances governing the division of property in the locale. However, many years ago, our supreme court held,

The right of a debtor to have a homestead, not exceeding 40 acres in extent, platted out of a larger tract on which he resides, is absolute and subject to but one limitation; that is, it must be set off so as to include the dwelling house or home of such debtor. Government subdivisions[2] may be ignored and the area platted in any shape or form and from any part of the whole tract.

*Berner v. Dellinger*, 222 N.W. 370, 371 (Iowa 1928). While the court in *Berner* was discussing an agricultural homestead of forty acres, not a homestead inside the city limits, the bank fails to cite any case law that indicates the homestead rights of city residents are less protected than those who reside in rural areas. *See id.*

In support of its claim, the bank quotes from *Helfenstein v. Cave*, 3 Iowa 287, 291–92 (1856), where the Iowa Supreme Court determined the debtor was not entitled to a homestead exemption because the value of his property exceeded the value limitation established in the statute. *See* 1848 Iowa Acts ch. 124, § 1 (restricting a homestead to forty acres used for agricultural purposes or one-fourth an acre in a town, city, or village plat provided the value of the homestead or town lot and dwelling does not exceed $500). The *Helfenstein* court noted that if the value of the homestead could be reduced to reach the $500 limitation, it should be so reduced. 3 Iowa at 291. But if the property cannot be reduced because its smallest quantity, "such as to the dwelling-house and its appurtenances," still exceeds the $500 value, no homestead exemption is

---

[2] The *Berner* court's reference to "[g]overnment subdivisions" in this context pertained to the lines the federal government survey imposed on the land. *See White v. Rowley*, 46 Iowa 680, 681–82 (1877) (noting "government lines" need not be respected when carving out a homestead out of a larger farm because the "government lines are run arbitrarily and it is not possible that any presumption can be based upon them in regard to the demands of a homestead or the intention of the person entitled to homestead rights"). We do not consider *Berner*'s use of the term "[g]overnment subdivision" to refer to city zoning provisions.

granted. *Id.* at 292. The court noted, "It is true that this gives to him who has little, and takes from him who has much, or who has only more. . . . But we do not know any other way of interpreting it." *Id.* The court noted there was "no provision for dividing the homestead." *Id.* However, the statute the *Helfenstein* court was interpreting was amended. Our current statute does not have an upper limitation on the value of the property and allows for dividing the property to conform to the required number of acres. We find the language restricting the use of the homestead exemption in *Helfenstein* inapplicable in this case.

The bank also cites the case of *In re Wait*, No. 08-01390, 2009 WL 2341325, at *2 (Bankr. N.D. Iowa July 29, 2009), for the proposition that the debtor's designation of the homestead "may not be arbitrary, capricious, or unreasonable." The issue in *Wait* was not whether zoning requirements affected the homestead designation of the debtor, but whether the debtor's designation of the homestead was reasonable in light of the particular designation's impact on the remaining, nonexempt property. 2009 WL 2341325, at *2. While we may agree in theory with the bankruptcy court's application of law from other jurisdictions when interpreting Iowa homestead law, the bank did not challenge before the district court, nor on appeal, the obvious gerrymandering done by Golden in this case when the homestead plat was prepared.[3] Instead, the bank only challenges whether the designation was allowed at all in light of the local

---

[3] The result of the creation of this gerrymandered homestead plat is that the remaining property is now a nonconforming parcel under the current city zoning ordinance. However, the marketability of this newly created parcel, while interesting, is not before this court.

ordinances that govern the size and characteristics of pieces of property in the city limits.

The city of Clive has enacted zoning ordinances that dictate the size, location, and configuration of residential lots within the city limits. *See* Clive, Iowa, City Code of Ordinances 11-4-6 (requiring a residential lot to "abut at least forty feet on at least one public street" or "[a]n exclusive unobstructed ingress/egress of access or right of way of at least twenty-four feet wide"); *see also id.* 11-6-2(b), 12-5-4(c) (setting the minimum lot area for residential lots and dictating the minimum width of lots used for residential purposes). The bank asserts because there is no way to divide Golden's property to create two conforming residential lots, the homestead designation should be disallowed. The bank points out the power to regulate the division of land stems from Iowa Code chapter 354, and the statement of purpose for that chapter indicates the legislature's intent to "abrogate individual homeowner's rights" to "strike a fair balance between the competing rights of landowners and the interests of the public to have thoughtful control over subdivisions of land." *See* Iowa Code § 354.1 ("It is the purpose of this chapter to provide for a balance between the review and regulation authority of governmental agencies concerning the division and subdivision of land and the rights of landowners."); *see also id.* § 414.1 ("For the purpose of promoting the health, safety, morals, or the general welfare of the community . . . any city is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the

density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes.").

However, Iowa Code section 561.16 provides that the homestead is protected except where there is a "special declaration of statute to the contrary." We find no provision in chapters 354, 355, or 414 that could be interpreted as a "special declaration" by the legislature that a city's power and right to control the division of property within its jurisdiction in any way limits the homestead right granted in chapter 561. To infer such an intent from the language used in chapters 354, 355, or 414 without the legislature's use of specific language abrogating homestead rights would be contrary to century-old case law that extolls the "important public purpose of the protections established for the homestead interest." *See Waterman*, 847 N.W.2d at 567. It would also be contrary to our directive to "broadly and liberally" interpret the homestead statute in "favor homestead owners." *Id.* The acceptance of the bank's position would eliminate the homestead exemption for a large segment of the population who own homes in a city on a lot greater than one-half acre without a legislative directive to do so. *See Underberg*, 291 N.W.2d at 21 ("Homestead rights are purely statutory and get their vitality solely from the provisions of legislative enactment.").

The bank claims that the one-half-acre limitation on homesteads existed at the time Golden purchased the property and the property purchased consisted of a lot containing almost a full acre of land. Thus, by purchasing this particular lot, knowing further subdivision was not allowed in the city, Golden should have been aware he would not have been allowed to assert his homestead exemption. In

response, Golden asserts the local city ordinances should not be allowed to preempt state law and eliminate the right to designate a homestead "in any shape or form and from any part of the whole tract." *See Berner*, 222 N.W. at 371. Considering the controlling language in *Berner*, 222 N.W. at 371, that the right to the homestead "is absolute and subject to but one limitation; that is, it must be set off so as to include the dwelling house or home of such debtor," and that homestead may be "platted in any shape or form and from any part of the whole tract," we conclude the district court correctly concluded Golden had the right to assert a homestead exemption in this case. Because there was an absence of an alternative homestead plat, it was appropriate for the court to adopt Golden's designation.

**AFFIRMED.**